All right. Council, if you're in place for the next case of Farmer v. Eagle Systems, we're prepared to hear argument. First from the appellant. Please record. I'm Ralph Bryant from the Eastern District of North Carolina. I'm here on behalf of the plaintiff appellant, Sherell Farmer. We filed this action under the False Claims Act retaliation provisions. And if I'll just tell you a little bit about the case, my client, Sherell Farmer, worked for the defendants, DST and Eagle. He worked there at a supply depot in Fort Bragg, North Carolina. The defendant, Eagle and DST, what they do is they have a contract with the federal government. And under that contract, they are entrusted with federal property at Fort Bragg. They are obligated to distribute, to account for that federal property, to distribute that federal property and a lot of it military-grade equipment, to distribute to military personnel who leave Fort Bragg and often go into the war zone. Mr. Farmer, the plaintiff, worked for them as just an entry-level order clerk. Sometime in April, August of 2012, Mr. Farmer saw the defendant's warehouse supervisor steal certain of that property that the fact, what he saw him, what he saw the warehouse supervisor do is participate in the theft of what he described as a bunch of night-vision goggles, these night-vision goggles, military-grade night-vision goggles. Well, he and some of his other co-workers saw it. Well, a few days later, he was contacted by the defendant and he was asked had he seen by their management, asked had he seen the theft of government property. And he told them he had. And they asked him to make a statement. And in the statement, he named the warehouse supervisor and told them that, yes, I watched him steal federal government property and I'm reporting this as a theft. Was he required to do that? He, by their training, by their training, yes, sir. Their policies and procedures for training, he even says in his letter, we're trained to report theft of government property. Then doesn't that suggest that he really wasn't reporting the matter in an appropriate manner? Well, no. I mean, I would say it like this. The test for, under the False Claim Act, is whether or not his efforts, right, were efforts to stop one or more violations. So by reporting it. Well, I guess the question is were they really efforts on his part or was this simply part of a none of them reported it. And so if they were all under some kind of requirement to report it, none of the rest were willing to come forward and report it. Well, that makes it just a violation on their part, but it doesn't answer the question as to whether or not a requirement to report makes out a False Claims Act violation. Yeah, I would have to go back to some of the earlier cases. Some of the earlier cases talk about the fact that it can be protected activity, even when the person engaged in the activity does not know that it could possibly be a False Claims Act claim. It could still be protected activity. And that was under the old test, under the distinct possibility test before it was amended in 2009, when it used to say that protected activity was only conduct in furtherance of a viable violation. So our contention is that reporting theft, when you're an entry-level person and you're reporting theft at a high level in this government contractor of federal government property, that that constitutes an effort to stop one or more violations of the act. Well, theft is a criminal violation. So it seems to me that we're attempting here to fit a square peg in a round hole by saying that a theft makes out a False Claim. Well, and I think that the district court judge, that's kind of where he was on it, that it was a criminal violation. So since it was a criminal violation, it wasn't really a False Claim Act violation. But, you know, if you look at the actual wording of the statute as it was amended in 2009, as it was amended, 31 U.S.C. 3729, it sets out. It doesn't just say that the False Claim Act is just reporting fraud. It says that people who, people could commit violation of the False Claims Act by doing certain things. In the Triple Canopy case, they talked about filing false certifications. In the statute, one in particular, and I think this is the one that really speaks to this, it says that a person could commit a violation of the False Claim Act when they have possession, custody, or control of property or money used or to be used by the government and no one delivers or causes to deliver less than all of that money or property. I would submit to you that if you really look at this, whoever wrote this, they were trying to get at not just property involved in theft, they were trying to get at the situation where the contractor did not deliver all the property for any reasons. And the fact that, and it seems to me that they specifically wrote this to include the situations where the government contractor diversed the property, right? They basically diverted the property to somebody's personal use and when time came to account for this property to the False Claims Act because if you stole the property and the property is no longer there, there's no way you can satisfy this requirement or it's almost an automatic violation of this requirement. I'm sorry. I was going to say, was there a time when the entity had to account for this property in this case? I'm sure there is. Did that happen here? We're here on 12B6. We're here on 12B6. And the case was dismissed without us even being able to conduct any discovery. And the reason why the court dismissed it is the court used the distinct possibility test and it said that, look, it said one simple act of theft by a federal government contractor does not support a viable FCA claim. That's what it said. But it was using the language in the distinct possibility test and for good reason, the defendant was asking the court to use the distinct possibility test. I guess my question was, would you have had to allege in the complaint that there came a time for an accounting and that accounting did not occur or it occurred falsely? No, Your Honor. I do not believe we had to. I think there's a Supreme Court case, the Graham Supreme Court case that I cited in my brief. It talks about the difference between pleading a claim where you're proving a violation. You know, some people can go to the False Claims Act. They're proving a violation. We're not under that statute. That's a Rule 9 specific pleading. We're under the notice pleading side of it and the Supreme Court in trying to distinguish between the pleading of the two said plaintiffs does not have to allege that a false claim was submitted. That's like the quote from the Supreme Court decision that a plaintiff in a retaliation claim does not have to allege that. Mr. Bryant, I don't know how we're going to rule, but I have to say, it seems to me, taken as true, the allegations in the complaint show that your creative lawyering, it strikes, I think, a lot of lawyers and judges as just a bit of a stretch to try to fit these facts of wrongdoing, taken as true, into the way that your client, taken as true, the allegations, was wronged. I mean, a number of states have, even for at-will employment, all kinds of public policy exceptions to at-will employment. I don't know if there's a workers' compensation claim here of some sort. And I take it your client didn't sue the supervisors. Now, maybe state law provides an immunity of some sort in that situation. But I guess I'm sort of rambling here, but it seems like an unusual effort at creative lawyering. And even given the Rule 12b-6 standard, you're asking courts to do an awful lot here, it seems. Well, I mean, if you look at the purpose of the False Claims Act... Well, but we don't look at the purpose of statutes until we first look at the text of the statute, okay? In the earlier argument, Judge Wynn, I think it was, referred to the spirit of a Supreme Court case. But we don't go after the spirit of a law. We look at the text and we say, does this really fit? Sure. And if we look at the text, it certainly fits. I mean, it certainly fits. Because what the text attempts to do and what the 2009 amendments attempted to do is broaden the protections for people who come forward with information of misconduct. Not all misconduct, though. See, that's the problem. It's not all misconduct. Yeah, but, okay. But the rule says, any efforts, efforts to stop one or more violations of the False Claims Act, I will submit to you that under the False Claims Act, that if a, I don't know, I think we can almost all agree on this, but under the False Claims Act, if a contractor who's entrusted with federal government takes that property and diversifies it and steals it, steals it, that he will have committed a violation of the False Claims Act. There's no way he can deliver, no way he can ever deliver all of the property that he was entrusted to for the federal government. So it's certainly a violation of the False Claims Act. And for somebody like my client to work in a company like this and to come forward, it's a big deal. It's a big deal for the purposes of the False Claims Act. Because in our local court, in the district court, we talked about the fact that the OIG is going around the world trying to figure out how we're losing this property. And so when my client steps forward and talks about the loss of federal government property, it doesn't seem that, it doesn't seem that the state law should be where we turn to. It seems like the, his conduct, his comments were to prevent the loss of federal government property. And when you look at the statute, it clearly attempts to protect somebody like him who stole it. And I would submit to you that it serves the purposes of it. I know we shouldn't get there until we got to the statute, but I think we got to the statute. It serves the purposes of it, because if not, then you've got people like my client that seized theft of federal government property, and they get this, if they get a decision, they get caught. What if it's true that the goggles were stolen? Yes, sir. But then they were brought back? Or what if it's true that the goggles were stolen, and the companies deducted the cost of the, the replacement cost of the When you comfortably say this is a false claims act retaliation when the company's own rules were what it appears actually motivated your client to give this presumably truthful and accurate report. I saw theft at the workplace. I was asked for my information. I gave it. I'm required to do that under the rules of the It appears, and I don't mean this pejoratively, I really don't, but it appears like the false claims act only comes into this case after his employment has ended, and he goes to a lawyer, and the lawyer, as I say, creative lawyering, you're looking at the facts, you know what state law is, you know what federal law is, any good lawyer tries to fashion a complaint that will afford relief to his or her client. That's all, that's how we want the legal system to operate. But there's, there seems to be a real disconnect here between what's going on in this statute, and what actually went on in this workplace. Your Honor, in the, you know, what if, 12B6, what if what was going on was they were getting these goggles, they were selling them on eBay, and these goggles were ending up in the hands of the enemy in Afghanistan, and because they have a special millispec in it, that when the enemy had these goggles in Afghanistan, and our people had the goggles in Afghanistan. I hope I haven't taken you outside the record, but in this case it's not about what's going on in Afghanistan. It's actually, it's in the record, so I guess what I'm saying is, that's what we had in the record in the lower court. What I'm saying, Your Honor, is this is 12B6. If I come back here on summary judgment and have nothing, you know, that's one thing, but this is 12B6. I will submit to you that what the record is going to show when we can take some deposition is that in order, the only way you can hide the theft of this property is you have to make a false, excuse me. I'm sorry, did you ask the district judge for leave to appeal, to amend? No, Your Honor, because. Why not? He never, he said, he did not say we need to argue something else. What he said was, one theft. Well, you know you have an absolute right to amend. I know, but. Under Rule 15. Okay. Yes, Your Honor. I mean, before an answer is filed. You have an absolute right. Yes, Your Honor. Yes, Your Honor. But he applied the distinct possibility test, and he also said his conclusion was, one theft of federal government property can really never become an FCA violation, so plaintiff has not shown a viable possibility of a false claim. Okay, and I didn't mean to suggest that your appeal was improper or premature or anything of the sort. Thank you, Your Honor. I will reserve. Thank you very much. We'll hear from the other side. May it please the Court, Justin Davis and Nancy Paschal on behalf of DST and John Joe and Carrie Shadd for Eagle Systems. Most of my argument will be directed toward the FCA protected activity issue that we were just discussing. Quite simply, Your Honors, the False Claims Act does not apply to this case, and the dismissal of the plaintiff's claims was appropriate. It's notable that none of the attorneys in this case have cited to you any single case in which theft of property by a co-employee formed the basis of a QTAM action or a whistleblower or an anti-retaliation action under the False Claims Act. No case has been cited, I would argue, because the plain language of the Act itself makes clear that the FCA is a scheme designed to prevent fraud on the Federal Government. We don't have any cases where this 2009 amendment was added to the Act. We have a very clear law in the Fourth Circuit, but in 2009 the statute was amended, and there are circuits that have looked at that additional language to determine, is that an extension in terms of the kinds of things that would fall within the False Claims Act? The extension was not related to the type of underlying activity that somebody is making a report about. The extension dealt with the action of the whistleblower, meaning did the whistleblower report something internally that was fraud? Not did the whistleblower just report wrongdoing. That's not what the amendment did. The amendment dealt with the whistleblower provision. The amendment did not change the underlying wrongs that are prohibited by the False Claims Act. And that is, in essence, what the plaintiffs are trying to do here, and I think it was a very accurate analysis. This is trying to fit a square peg into a round hole. The whistleblower provision does not apply to reporting all types of co-employee misconduct. It applies to efforts that are taken by an employee to stop certain explicitly prohibited activity, which is set forth in the Act. Theft is not an activity specified in the False Claims Act, and theft is not fraud. They're not the same thing. What the plaintiff here is claiming is that the amendment that you refer to and the expansion that it codified now covers a report of theft by a co-employee. And quite simply, nothing could be further from reality. The expansion of the whistleblower provision related to reporting and investigatory activity by the whistleblower and was not in any way related to the type of wrongdoing that the whistleblower was investigating. It didn't change that type of wrongdoing that could suddenly invoke the FCA protection. Do we consider how likely it would be that the theft of goggles from an inventory would necessarily indicate that the defendant would have to deliver less goggles under this contract? No. I don't think you can at all because I think what the FCA requires is fraud or false reporting. In order for the FCA to come into effect and in order for a government contractor to potentially have any FCA liability, there has to be some false reporting by the government contractor. What you have here alleged is something entirely different. You have an allegation that another employee converted something to his own personal use. There's no allegation here that either of these government contractors in any way, shape, or form benefited. There's no allegation that the theft occurred within the context of the employment. This was clearly outside the scope of employment. Is it significant that the theft was reported as being done by a supervisor? No, I don't think that's significant in any way, shape, or form. And I don't recall, did the supervisor who allegedly committed this theft exert any influence over the employees who recorded the inventory? I don't think there's any allegation. I'm sorry, I'm not sure I understand your question, Your Honor. In other words, did he exert any influence? Is there any allegations, anything here from 12B6 we look at to determine whether the supervisor exerted any influence over the employees who were there to record the inventory? I don't think there's any allegation that shows that the supervisor in any way, shape, or form participated in any fraudulent conduct that would lead to his employer being accused of fraud against the government. There's no allegation there of that whatsoever. The complaints allegations are literally limited to this employee, Mr. Farmer, observing what he believed to be theft and simply reporting it because he believed he witnessed a theft, and as you indicated, he was trained to report that. There's no indication whatsoever in anywhere in the complaint that Mr. Farmer was trying to stop some fraudulent act against the government. There's no allegation of that whatsoever. The allegations are limited to he observed what he believed to be theft, and so he made a report regarding what he observed because he was trained to do so. Why don't we take the complaint in the light most favorable to Mr. Farmer in this case, and I think you may have misspoken when you said he's got to allege an actual false claim. He doesn't have to allege that under these amendments. He just simply has to allege that he's taking action in an effort to stop a potential violation of the act, and isn't that what he's saying happened here? No. What he's saying happened here is that a co-employee stole property. He's not saying anything about—he is not in any way, shape, or form saying that EGLE or DST were acting in some way to defraud the government or to make a false claim for monies from the government. He's not saying that at all. That's not alleged anywhere. His allegations regarding the activity he's reporting or that he reported are limited to the actions that he observed by one person. They're not related in any way, shape, or form to the contractor, to the employer. They're not related to the government being defrauded in any way, and I think that's significant, and I think we're limited to what's alleged in the complaint. Theft alone is insufficient, and I think Your Honor has actually touched on this in the previous argument, which is you would have to have theft plus something. There has to be some allegation beyond just a simple theft by a co-employee. There's nothing there. There's simply nothing pled or alleged to indicate that there was any fraud being investigated or that Mr. Farmer believed the government was being defrauded. One of the arguments that I heard made was that Judge Britt applied the wrong test. That's a bit of a red herring. When Judge Britt looked at this, he correctly noted that a whistleblower's report must specifically allege fraud on the government and not just general misconduct. The recitation of the law by the court below regarding the conduct that invokes the FCA's whistleblower protection is consistent with the plain language of the statute and this Court's application of the law. Mr. Davis, this may be going outside the record, but I would assume that your client would have had to have some kind of reporting requirement with respect to these materials that were entrusted to its care at some point, would have had to notify the government as to those materials. So if the plaintiff in this case had alleged that as a result of the theft, the defendant in this case would not have been able to comply with those reporting requirements which were coming up at whatever date that might have been, would that be enough? No, I don't think so, because I don't think he could allege that, because that would be assuming... Well, he could allege anything. Well, I don't think he could reasonably allege that, because I think when you report an inventory, an inventory report is accurate when the report reflects what you actually have in inventory. And so if a government contractor reports that they were supposed to have 500 widgets and five widgets were stolen and that's the report that's given to the government, that's an accurate report. I guess your point is you don't know what the report is going to be. Correct. That is absolutely correct. And that's the problem in this case. There's simply no allegation that either of these contractors engaged in any activity that was fraud. It's just not there. There is no allegation in the complaint that either of these contractors made any false report or false claim or that they had any inkling to do so, or that Mr. Farmer was investigating them with the suspicion that he thought they would. That's not alleged. There's nothing there which would invoke the coverage by the False Claims Act. And so I think this is a big stretch. It's a big stretch. It's creative lawyering. Does North Carolina recognize the public policy exception to the at-will employment doctrine? What are you referring to? I'm sorry. Apparently not. What I just asked doesn't make any sense to you. He's referring to workers' compensation cases. There are cases in which the public policy doctrine has been recognizing exceptional cases. I'm not aware in this case of where that would apply, Your Honor. I'm sorry. I simply can't. Again, taking the allegations is true. If what had been done, arguably taking them true, what had been done to Mr. Farmer here had been done on the basis of race or gender or religion, I don't think there's any question he could state a claim. What's somewhat odd about this case, he's alleged harassment. It seems to me, again, accepting it's true, the allegations, is some pretty nasty, ugly stuff. I mean, a guy reports a theft in the workplace to his superiors, and the people who committed the theft and their friends and associates come together to make his life so miserable that he quits the job. Again, accepting all the allegations is true. As I say, if he did that on an impermissible basis, a prohibited characteristic, nobody would question whether you have a cause of action. And for some reason in this instance, counsel has tried to fit this sort of square peg in a round hole of the False Claims Act retaliation provision. So that's why I asked the question. And I think Mr. Joe actually will be able to address that question if I may. Okay, great. Thank you. I think the other side has a little time. Good morning, Your Honors. May I please court John Joe with my partner, Ms. Schatt, here with the Smith Anderson Law Firm, here for Defendant Eagle Systems and Services. And just to first address Judge Davis's question, there is a claim under North Carolina law for wrongful termination. However, that claim does not apply to a constructive discharge claim. It may be getting to your question as to why this claim has been brought as a False Claims Act claim, potentially because other claims would not fit these facts as well. I also want to briefly address some of the issues discussed on the protected activity prong of the False Claims Act claim, which were raised earlier by this panel. I think it is important also, I think it was Judge Davis that said we need to start with the text, with the statute, before we look at other things. And when you look at Section 3730, it is clear that, as Mr. Davis has mentioned, what the amendment did was expand upon the protected activity by saying, it is not just acts in furtherance of an FCA claim, but also efforts to stop one or more violations of this subchapter. What the plaintiffs are asking this court to do is to just ignore that last phrase of the amendment and say that it protects efforts to stop one or more violations of anything. And that is not what the statute says. It says efforts to stop one or more violations of this subchapter, specifically referring, again, to the False Claims Act and 3729 and the eight specific enumerated violations that are listed there. And as we've pointed out, or as Mr. Davis has pointed out, there is no allegation in the complaint of anything that amounts to or close to a 3729 violation. I think Judge Diaz, you had asked, you know, isn't there going to be at some point some reporting or some certification regarding inventory? As you pointed out, that's not actually in the record. And at a 12B6 stage, we're certainly required to take the factual allegations, that's true, but not to assume facts that aren't in the evidence or, I'm sorry, in the pleadings. However, I think what that raises is the point that it's not enough just to show a theft or even potentially a breach of contract. It was in this Court's decision in U.S. Act 12, Owens v. First Kuwaiti, where this Court said you can't shoehorn what's essentially a breach of contract action under the False Claims Act. That's just another example of where this Court has recognized the limitations of the reach of the False Claims Act. Is it possible that the plaintiffs are implicitly claiming some sort of breach of contract? They haven't even expressly alleged that. There is no allegation whatsoever of what happened down the road with that inventory. Let's just say that they did allege that there was a shortfall in the inventory. That amounts to a breach of contract. That's not what the False Claims Act was intended to cover, and that's certainly not what is covered by the express language of 3729. You see throughout that section numerous references to submission of false records, to knowingly concealing information to avoid obligations to pay the government, to knowingly engaging in wrongful transactions that defraud the government. That's what's covered by 3729. There is nothing in the complaint that alleges anything remotely close to that. What we've got is a simple theft. So what they're trying to do is basically take the False Claims Act, expand it well beyond the statutory language as well as the intent to cover any type of federal contractor wrongdoing that potentially could harm the government, and that is not what the statute says and that's clearly not what Congress intended by the language of the statute. I also want to briefly address a point raised in the reply brief that we have not obviously had a chance yet to address. I understand, Judge Davis, your view at this point is that they've done enough to plead a harassment that could rise to the level of a constructive discharge under a Title VII claim. What I would respectfully say is that the law that applies to retaliation claims under Title VII does not apply to the False Claims Act, and it's an important difference. So it may be correct that if there were allegations of racial epithets or some other sexual discrimination, et cetera, that there might be enough there. But the case that's relied on for that point to expand Title VII retaliatory provisions is Burlington Northern v. White, the Supreme Court's decision. But that decision was based on a very careful analysis of the language under Title VII where the Court looked at the violations of Title VII and said, we see all these words in the Title VII violation section that tie the violations to the terms and conditions of employment, discharge, demotion. In fact, it uses terms, conditions, and privileges of employment. But when we look at the retaliation provision, the whistleblower provision, there are no such limiting words. And therefore, based on that analysis, the Court construed retaliatory acts under Title VII to be broader than acts that solely affect the terms and conditions of employment. That's not what we have here under the False Claims Act. Again, when we look at the exact language of the statute, 3730 expressly requires that the adverse actions complained of relate to the terms and conditions of employment. Those limiting words that the Court was not able to find under Title VII, they are expressly written into the False Claims Act. Therefore, this argument in the reply brief that we don't have to show constructive discharge. We can just allege harassment and, therefore, emotional distress because of that harassment. Let me go back to the 2009 amendment. It seems to be an interesting point here because we don't have any cases interpreting the fact of that amendment language. The Sixth Circuit has addressed it. Some other courts have, but we have not. And I'm wondering about this effort to stop fraud. Why shouldn't that imply that that means to prevent fraud? So activity that's trying to prevent fraud, even when that fraud has not happened, would that be covered? Our position on that would be, Your Honor, that it's not that theft could never be involved in a claim that could rise to a False Claims Act claim. Our position is theft by itself is not sufficient as a matter of law. Theft and fraud are different. But what about an effort to prevent fraud? I mean, if you report a theft as an effort to prevent fraud, would that be covered? That in and of itself, Your Honor, as we would contend, is not sufficient as a matter of law. There's got to be theft plus some other action or potential action that could amount to a fraud. And I think as others in this panel have recognized, you could come up with some hypotheticals where that. We've got, as I said, you know, you've got other circuits looked at it. What's the test we're supposed to apply in light of the 2009 amendment? We haven't addressed it at this circuit. So what test do we now apply? And I would again go back to the language of the amended provision. There are two activities that fit under 3730 as protected activity. The statute clearly says, in furtherance of an FCA action, a KETAM action, which we don't have here, the second way you show protected activity are efforts to stop one or more violations of this subchapter. And that is the limitation of the False Claims Act consistent with its purpose and content. In other words, prevent fraud? That's correct. Or activities that would lead to a violation of the items enumerated in 3729. And again, going back to some of the hypotheticals that were discussed, if the plaintiff had alleged that I think someone had suggested maybe the supervisor could have been someone who exerted influence over the person that was filling out the inventory report and said, I need you to file a false report about the inventory. Instead of 100 goggles, it's 95 goggles. Your time is up. Thank you for your argument. Oh, I appreciate it. Thank you very much. We'll hear from the appellate if you wish to offer some rebuttal. If I may, I would like to start with the language from the Graham case. Let me just highlight it here. Because a lot of what is being said is that the plaintiff must allege that a retaliation plaintiff must allege that they have submitted some type of false claim, and that's kind of where they're going at. But in the Graham case, the Supreme Court, Graham County Soil and Water Conservation v. United States, the court said, for even a well-pleaded retaliation complaint, need not allege that the defendant submitted a false claim. By contrast, well-pleaded 3730A and FCA fraud action claims require plaintiffs to plead that the defendant submitted a false claim. And that kind of goes to the crux of this. We are alleging retaliation. The people that are required to plead a false claim, those are people who want to prove a violation, who are trying to get a percentage of what the government recovers. So will we confront a False Claims Act situation, a company like this, every time an employee comes forth and says, you stole a piece of equipment? I mean, is every one of those going to be a False Claims Act? I would submit to you, Your Honor, two things. One is, here, our report was that the warehouse supervisor, the guy who's responsible for running this entire warehouse, this is the guy who participated in the theft. So when they're saying a mere co-employee, that's not accurate. This was the warehouse supervisor. So you're saying that the differentiating fact here is that it was a supervisor who was doing the act? I think it's important because, you know, under agency principles, they're responsible for the supervisor's conduct. And this is the warehouse supervisor committing the act, then yes. I mean, that should be, and actually reporting his theft should be actionable. What's the second part of your answer to the judge? The second part is what we're saying is that once a person engages in this conduct, right, they're protected from retaliation, not that you have to give them money or do anything else. What you cannot do is harass them and force them to quit because they came forward with this information. And in the 2009 amendments, that's what it was all about. It was about extending the protection to employees so they would feel free to come forward from harassment. Your answer would be any employee of a government contractor who reports the theft of property by any supervisor is thereby protected from retaliation under the False Claims Act? Yes. That's what you would distill the rule? Yes, Your Honor. And I will continue, you know, a lot is down on the record, but if you, I mean, if we had a chance to conduct discovery and just see what the intent of this whole statute was, the purpose of it was to get people like Mr. Farmer to be able to come forward and not be retaliated against. There's no allegation that the defendant would have covered up the theft. There's not an allegation to that extent. There is not, Your Honor. And really, when you're researching. And there's no allegation that it was plausible that an employee would have been directed to falsify some records, inventory records. There's no allegation to that. The only thing we have is a naked theft, and I use the term naked because that's all the facts. I mean, that's all you have is eyesalve goggles being stolen, nothing else. And that alone is sufficient, in your view, to trigger the False Claims Act. I would say yes, but we have more here. We participated in an internal investigation of the theft of those goggles. In case after case, the Fourth Circuit says participating in an internal investigation is protected activity. Would it be enough if a fellow employee, a true fellow employee at the same hierarchical status in the company did the theft, but a supervisor knew about it? Would that be enough under your rule?  Well, you know, I guess for me, when I think about what I know about the people who wanted to expand this coverage, yes. Well, they wanted people to come forward. What if the supervisor learns about it after the fact, well after the fact? Would that be covered by your rule? Can I just get this in? They're saying theft is not fraud. There's not one forensic auditor that would tell you that theft does not lead to fraud. Theft of inventory is how fraud occurs. Thank you. Thank you. The court will come down in Greek Council, and after which we'll take a brief recess and proceed to the third case.
judges: James A. Wynn, Jr., Albert Diaz, Andre M. Davis